### BOARD OF COM'RS OF CARTER COUNTY v. FIRST NAT. BANK OF BERWYN et al.

No. 21201. Opinion Filed July 27, 1932.

Rehearing Denied Oct. 18, 1932.

John M. Thompson, Asst. Co. Atty., for plaintiff in error.

Potterf, Gray & Poindexter, for defendants in error.

KORNEGAY, J. The record shows that

this cause originated by the filing of a petition by the First National Bank of Berwyn and Jack Cavner against the board of county commissioners of Carter county, Okla., on the 6th of March, 1928, to recover on some claims against Carter county, as follows:

| No. 2924, | Amount owing thereon, | | $507.34 |
| No. 3394, | Amount owing thereon, | | 315.00 |
| No. 3776, | Original amount owing, less amount paid | $100.00, | |
| | Balance due | | 200.00 |
| No. 4106, | Amount owing thereon, | | 235.00 |
| No. 4382, | Amount owing thereon, | | 150.00 |
| | Total | | $1,407.34 |

The petition further alleges a transfer by Cavner by assignment to the First National Bank of Berwyn as a seecurity for indebtedness owing to the bank, and the prayer was for the recovery of $1,407.34, with interest at 6 per cent. per annum from the 1st of March, 1928, until paid. On this petition a summons was issued and service appears to have been had, and the board of county commissioners requested the petition to be made more definite and certain by attaching the claims.

An amended petition was filed attaching the claims by a series of exhibits, the first one being exhibit A. It had been examined and approved, $507.34, by the county engineer, T. B. Mathews, and was verified by the claimant. It called for road work as per the attached pay roll, which was a statement of 8 hours work per day for the month of December, 1926, at $5 a day. The January pay roll was set out, and the February pay roll, and the March, under the various claims. Some appeared to have been approved by the engineer, and some not, and some were rejected by the county commissioners. An amended petition was filed more fully describing where the work was done.

An answer was filed denying everything, and denying that the work was done on the county highway, and denying any contract of employment with the board of county commissioners, and setting up the fact that only one county commissioner, Jeff O'Brien, had employed Cavner, if he was employed, and further setting up the fact that no revenue was provided either at the time of hiring, if he was hired, or at the time of performing, and the deduction is made that therefore there could be no recovery.

Trial came on on the 3rd of October, 1929, and Jack Cavner testified, and it developed that he had not received any pay for the work, though he claimed he had done it, and that he had done the work under the supervision of one of the commissioners, Jeff O'Brien, who appears to have died before the trial. He described his work as general road work, and working every day. The claims were introduced in evidence, some objections being raised, and it developed that the claims had been turned down because there was nothing to pay them with. The language of the witness, concerning this pay, indicates that there were no funds for the work when it was done, though he did not know whether there was money on hand to pay for the work or not, and his testimony is as follows:

"Q. At the time this work was done under your supervision as district supervisor, you knew the condition of the finances of Carter county. A. No, sir; I did not. Q. As to whether or not there was money on hand to pay for the work? A. No, sir; all I know, we were not given the particulars, and the old man said go ahead and do the work, he would see we got our pay. Q. Jeff O'Brien made that talk individually, he said that himself? A. Yes, sir. Q. Why were these claims turned down? A. No funds I don't suppose. Q. This work was done in district No. 1? A. Yes, sir. Q. And to the best of your knowledge as to why they were turned down, the county had no funds to pay them? A. That is what he claimed."

It developed that the excise board had levied for each commissioner's district, though this practice appears to have been abandoned. Nova Brown, an assistant county clerk, was introduced as a witness to establish the status of the road funds for the year 1926 and 1927, and testified that at the end of December, 1926, there was $19,568.57 in the maintenance of roads and bridges fund, and that at the end of March, 1927, there was $953, and at the end of April there was $56.80, and there was a transfer made of $1,500 from maintenance of roads fund in district No. 2.

On cross-examination she was asked about the amount in district No. 1 for the 1st of December, 1926, and January, February, March, April, and May, 1927. There was objection to this by the counsel for the plaintiff in error, and the court sustained it and exceptions were taken, and the judge said he did not care anything about hearing the evidence. After this the counsel for the plaintiffs stated a desire to offer in evidence Exhibit F, which is as follows:

"State of Oklahoma, Carter County, ss.

"I, W. B. Frame, county clerk of Carter county, Okla., do hereby certify that the financial condition of Carter county is as follows, to wit:

"Valuation of Carter county for the year 1929 is $35,321,273 according to certificate made by S. W. Tyer, County Assessor.

"The bonded indebtedness of Carter county is $1,188,553 according to the financial statement as at June 30, 1929, of which $1,188,553 bonded indebtedness there has been paid since July 1, 1929, the sum of $18,000,

"The judgment indebtedness of Carter county as at June 30, 1929, is $81,804.61, according to the financial statement of Carter county. Judgment in the sum of $3,428.72 have been issued since July 1, 1929, making a total judgment indebtedness of $85,233.13.

"Witness my hand and official seal this the 30th day of September, 1929.

"W. B. Frame, County Clerk,

"By Nova Brown, Deputy."

On this evidence a judgment was entered against Carter county for all that was asked for except $200 on the $300 claim sued on, which was denied because $100 had been accepted while claim was in dispute. The position is taken here that the evidence did not show that there were funds on hand to meet the contracts, either when made or fulfilled, and a brief has been filed on the other side citing some cases and the testimony.

This is a suit against a municipality on contract. Article 12, ch. 32, of Okla. Stats. 1931, applies in a case of this kind. That article is embraced in sections of the 1931 Statutes as follows:

"5976. Judgments Against Municipalities —Definitions.

"The term 'board,' as used herein, shall be construed to mean the board of directors, or the board of education of any school district, independent or otherwise, the board of trustees of any town or township, the mayor and council of any city, the board of commissioners of any city having a charter form of government and the board of county commissioners of any county. The term 'municipality' as used herein shall be construed to mean any school district, independent or otherwise, any township, any city or town, irrespective of the form of government prevailing in said city or town, and any county.

"5977. Judgments—Proof—Appeals.

"Before final judgment in any suit based on contract shall be rendered against any municipality by any court of any county in the state of Oklahoma, except in proceedings to refund any indebtedness of said municipality, proof shall be made to the court, of the existence, character and amount of the outstanding legal indebtedness of said municipality, which proof shall include a statement compiled by the various officers having custody of the records from which the information required in the statement is taken, under oath, showing the following:

"1. An itemized statement of the bonded indebtedness of said municipality.

"2. An itemized statement of the legal indebtedness of said municipality, exclusive of the bonded indebtedness and the alleged indebtedness proposed to be converted into a judgment.

"3. An itemized statement of the indebtedness proposed to be converted into a judgment, so classified as to show, in separate exhibits, all items of questionable legality, if any, and the reasons of said officer or officers therefor:

"(a) The appropriations against which each warrant was drawn or claim accrued if in judgment, and if within the limits and purposes thereof as provided by law;

"(b) The income and revenue provided for the respective years, consisting of taxes levied and the actual collections of 'estimated income'; the total warrants issued against the same or the accumulated accruals as the case may be, and the amount, if any, in excess of the total income and revenue of the year;

"(c) The condition of each fund from which such indebtedness is payable as of the close of the month next preceding the filing of application.

"Appeals from the judgment of the court shall be allowed as provided by law, upon the giving of a bond for cost and damages in such sum as the court shall require; provided, that the county attorney of any county may, without the consent of the board of county commissioners of said county, take an appeal from said judgment on behalf of said county and without bond for costs and damages.

"5978. Compliance with Statute Mandatory.

"No judgment shall be rendered against any municipality by any court until the provisions of section 2 hereof, have been fully complied with. Any judgment rendered in violation of the provisions of this act shall be void and of no effect.

"5979. Exception as to Claim Under $200.

"The provisions of this act, except section 3, shall not apply to any claim which is less than $200."

The act of the Legislature was approved March 5, 1925, chapter 106, Session Laws 1925, It was divided into five sections, 5977 being section 2, and 5978 being section 3, and 5979 being section 4, and section 5, "All laws in conflict herewith are repealed," being left out by the compiler of the 1931 Statutes.

It is very evident in this case that no attempt was made to comply with this section of the statute. It is further evident that the judgment is pronounced to be void when rendered without this showing. It would scarcely be controverted that this was a suit on contract, though assigned. Under these statutes this cause must be reversed and remanded.

It may be that on a second trial a showing can be made that the county cannot complain of, as to the validity of the contract, but clearly under this statute a different showing will have to be made from what has been made if the amount involved is over $200. In the absence of some means of holding this statute void, the judgment here rendered must be reversed and the cause remanded, and it is so ordered.

LESTER, C. J., CLARK, V. C. J., and HEFNER and CULLISON, JJ., concur. SWINDALL, J., dissents. RILEY, ANDREWS, and McNEILL, JJ., absent.