### SINCLAIR PRAIRIE PIPE LINE CO. et al. v. EXCISE BOARD OF TULSA COUNTY.

No. 25116.    June 18, 1935.

Rehearing Denied Sept. 10, 1935.

Hunt & Eagleton, for protestants.

Holly L. Anderson, County Attorney, and Joe T. Dewberry, Asst. Co. Atty., for protestees.

BUSBY, J. This is an appeal from a judgment of the Court of Tax Review as to certain tax levies for the fiscal year commencing July 1, 1932, Tulsa county. Protestant and protestee both appealed from judgments as to certain levies.

The protestant contends that the Court of Tax Review erred in failing to find that the county had failed to set up as a surplus in its general fund the sum of $17,-636 81. It is alleged that the county excise board used a surpus of $645.22 when it had a surplus of $18,282.03 and failed to use $17,636.81 surplus to reduce the ad valorem taxation for 1932 33. It is shown that the county treasurer, without having funds available for that purpose, paid 1930-31 warrants in the sum of $17,363.81, the same amount as the surplus here contended for, and charged the same against the 1929 and prior years' surplus.

It is not denied that there should have been the sum of $17,363.81 additional surplus on hand as contended for by the protestant, and that the same was shown by the record to have been dissipated in the payment of obligations incurred during previous years. The question presented here

is: Were the funds on hand at the time, or unexpended, so proper transfer could be made if they were placed in an improper fund?

In Protest of Bledsoe et al. 161 Okla. 227, 17 P. (2d) 979, this court held:

"If an amount of money is illegally transferred from one fund to another, the amount of cash on hand in the second fund, not exceeding the amount illegally transferred thereto, may be considered by the excise board as in the fund from which the illegal transfer was made for the purpose of restoring, as far as possible, to the first fund the amount that belonged in it; but where such an illegal transfer of funds has been made and there is no cash on hand in the fund to which the illegal transfer was made, neither the excise board nor any court may direct that there be considered as cash on hand in the first fund any part of the amount illegally transferred therefrom."

To the same effect is the holding of this court in Protest of Downing et al., 164 Okla. 181, 23 P. (2d) 173, wherein this court held:

"An illegal transfer of funds must be disregarded and the amount thereof considered as cash on hand in the fund from which it was transferred when there is money in the fund to which it was transferred in excess of the sum appropriated for and necessary to pay the legal claims against that fund for the current fiscal year, and if the fund to which the money was so illegally transferred is the sinking fund, then there is money in said sinking fund in excess of a sum necessary to pay interest coupons and the bonded indebtedness as it matures; but where an illegal transfer of funds has been made and all of the money in excess of the fund necessary to pay the items above mentioned has been paid out and expended, then neither the county excise board nor any court may direct that there be considered as cash on hand in the first fund any part of the amount illegally transferred therefrom."

We find no error in the judgment of the Court of Tax Review as to that item, and it is affirmed.

The protestant next contends that the Court of Tax Review committed error in failing to find that Tulsa county had appropriated $44,594.51 for the highway fund of Tulsa county in excess of that which could be financed by the assets available for the support of said appropriations. The certificate of the excise board shows that there was appropriated in that fund the sum of $543,233.90, which was to be financed by the current one-fourth mill state levy for highway purposes to the extent of $40,515.11, the balance to be financed by surplus and income from other sources The question involved seems to be, Must there be a reserve set up for delinquent taxes, when a one-fourth mill state tax levy is involved and there is no county tax levy for highway purposes

There is no provision in section 10164, O. S. 1931, requiring a county to levy an ad valorem tax for highway purposes in order that such county may participate in the one-fourth mill state levy for highway purposes. Neither are we cited any holding of this court to that effect. The excise board evidently considered that this fund would be sufficient by the use of surplus and income from other sources without an ad valorem levy and none was made. Where no ad valorem levy is made there would be no necessity for a 10 per cent. delinquency to be added. In St. Louis-S. F. Ry. Co. v. Bonaparte, Co. Treas. 142 Okla. 177, 286 P. 343, this court held:

"Where there is ample surplus and estimated income from miscellaneous sources to satisfy the needs of the county highway fund, no tax levy is necessary and a levy made for that fund is void."

To the same effect was the holding of this court in Protest of Murray, 140 Okla. 240, 285 P. 80. We must, therefore, conclude that no 10 per cent. reserve should be taken from the amount shown to be available for highway purposes. The judgment of the Court of Tax Review is affirmed as to this item of protest.

The third item of protest involves sinking fund levies to liquidate two judgments and the funding bond issues founded upon judgments which are alleged to be void upon the face of the judgment roll. The judgments will be considered separately and referred to by the court number.

In judgment No. 11594, from the court of common pleas of Tulsa county. Federal Tax Company v. Board of County Commissioners of Tulsa County, the record shows that the petition was based upon sums paid to the county upon tax sale certificates where title failed. A summons was issued and properly served. Answer was filed admitting the ownership of the certificates and the payment of the amounts shown on the certificates, but did not admit the wrongful assessment or that the property had been stricken from the rolls, or whether the irregularity in assessment had been passed upon by a court of competent jurisdiction, and

demanded strict proof. The journal entry shows appearances of all the parties, the introduction of testimony and conclusions of the court. We cannot say that the officers of Tulsa county confessed judgment therein or that the judgment roll shows the judgment to be void on its face as contended. There seems to be a typographical error in the date of the journal entry, making it appear to have been entered before the petition was filed, but we think other parts of the record explain the error. The county commissioners having failed to make an appropriation therefor, the tax certificate holder had a right to obtain a judgment therefor. Protest of St. Louis-S. F. Ry. Co., 166 Okla. 50, 26 P. (2d) 212; Board of County Commissioners of Creek County et al. v. St. Louis S. F. Ry. Co. et al., 170 Okla. 485, 40 P. (2d) 1112. We think the judgment of the Court of Tax Review as to this judgment was correct and the same is affirmed.

Judgment No. 16800, from the court of common pleas, Walter Nichols v. Board of County Commissioners, was an action to recover refund payments made for resale tax deed. There is no provision of law for a refund to the purchaser of a resale tax deed of the amount of the original purchase money. Schuman v. Board of Com'rs of McIntosh County, 163 Okla. 118, 21 P. (2d) 40. The petition shows that the action was barred by limitations under the provisions of chapter 30, S. L. 1925 (O. S. 1931, sec. 12749), and that no such action could be brought whereby the court could obtain jurisdiction to render the judgment rendered therein. The judgment of the Court of Tax Review as to this item of protest is reversed and the levy ordered stricken as to same.

The second part of this particular protest is directed against judgment No. 13415 from the district court, W. M. Criner v. Consolidated School District No. 1, Tulsa County, and judgment No. 21257, Superior School Supply Co. v. Consolidated School District No. 1, Tulsa County, and the funding bonds based upon these judgments and the levy made to retire same.

As to judgment No. 13415, the proceedings show that the suit was based upon an account of $45,000 for a balance due on construction of a school building, heating and plumbing plant. There was no summons issued. There was attached to the plaintiff's petition a waiver of summons and waiver of trial by a jury on part of the defendant school district. In the defend-

ant's answer it is admitted that the several items and charges set up in the plaintiff's petition are true and correct as alleged in the petition, and that same is past due, unpaid, and that no funds are on hand with which to pay same. There is no allegation that any appropriation was ever made or any election had to raise funds to meet this obligation, or that such sum is within the statutory and constitutional limitation. Neither does the journal entry so show. Is such a judgment, unappealed from, subject to collateral attack?

In Protest of Kansas City Southern Railroad Co., 157 Okla. 246, 11 P. (2d) 500, this court said:

"The judgment roll shows no service of summons upon Sequoyah county. It shows that the chairman of the board of county commissioners attempted to enter an appearance for the county in the cause and to confess a judgment against the county. From the judgment roll we must conclude that the trial court was without jurisdiction of the person of the defendant. The judgment of that court is void upon the face of the judgment roll. See In re Protest of Gypsy Oil Co., [141 Okla. 291 285 P. 67] supra; Eaton, County Treasurer, v. St. Louis-S. F. Ry. Co., 122 Okla. 143, 251 P. 1032; Protest of Chicago, R. I. & P. Ry. Co., 151 Okla. 129 2 P. (2d) 935; Oklahoma City v. McWilliams, 108 Okla. 268, 236 P. 417; and Faught v. City of Sapulpa, 145 Okla. 164, 292 P. 15.

"The merging of an invalid claim into a judgment does not validate the claim, but a judgment of a court of competent jurisdiction, which is shown by the judgment roll to be valid, is valid against a collateral attack, even though the claim sued on in the action was invalid. As held in Faught v. City of Sapulpa, supra:

"'If a political subdivision of the state is sued in a court of competent jurisdiction having jurisdiction of the subject-matter of the action, and that political subdivision is brought before the court by proper service of summons, or if it files its answer which, by its terms, contests the claim and in no wise confesses the claim or the facts upon which the claim is based, and the court renders a judgment thereon within its jurisdiction, that judgment, unappealed from, is binding and conclusive upon the political subdivision of the state and upon the taxpayers thereof, subject only to the right to have the same vacated, set aside, or held for naught in a proper proceeding. Such a judgment may not be collaterally attacked. It must be given full force and effect by the municipal officers, the excise board, and the courts'."

In the instant case, the political subdiv-

ision was never brought before the court by proper service of summons. The answer filed by the defendant did not contest the claim, but, on the contrary, confessed the same and the facts upon which the claim was based. From the judgment roll we must conclude that the trial court was without jurisdiction of the person of the defendant, and that the judgment of that court is void upon the face of the judgment roll. Where a court has no power under the law to render a particular judgment under any circumstances, the judgment is void and subject to collateral attack. State ex rel. Southern Surety Co. v. Armstrong, County Clerk, et al., 158 Okla. 290, 13 P. (2d) 198. A judgment which is shown to be void on the face of the judgment roll will not support a funding bond issue. Eaton v. St. Louis-S. F. Ry. Co., 122 Okla. 143, 251 P. 1032; Protest of Kansas City Southern Ry. Co., 157 Okla. 246, 11 P. (2d) 500. A funding bond issue which is based upon a void judgment is subject to attack at any time. Faught v. City of Sapulpa, supra.

It is contended by the protestee that the holding in the case of Board of County Commissioners of Rogers County v. Bristow Battery Co. et al., 28 F. (2d) 195, controls the question here considered. We do not think so. It might be true that the holding in that case would control in the instant case were it not for the contrary holding of this court in Faught v. City of Sapulpa, supra, wherein this court held:

"Refunding bonds must stand or fall on the validity or invalidity of the indebtedness refunded unaided by any certificate that the same are issued pursuant to law and that the same are within the debt limit, or by the 30-day statute of limitations, except in so far as the attack thereon is based on failure to comply with legislative requirements, such as an attack being required to be made within that period"

—and said:

"In order to make this clear it must be kept in mind that the only party before the court in a refunding proceeding is the municipality and the only other party authorized to appear before that court is the taxpayer. The claimant or creditor is not before the court, and there is no authority to bring the claimant or creditor before the court. If the court is authorized to say that the claim is valid and by so saying to give that order the effect and finality of a judgment, it must of necessity have the authority to say that the claim is invalid, and that determination would have the same

effect and finality as a judgment. Can it be said that a creditor would lose his right by the determination of a court without the creditor being before that court? Certainly not. The procedure outlined is in nowise adversary to the claim of the creditor."

The question in the instant case is not as in that case, whether the legislative requirements for issuing funding bonds were complied with wherein an attack on such proceedings is barred in 30 days after the approval thereof by the Attorney General as bond commissioner, as provided in section 5413, O. S. 1931.

Neither is the question here considered controlled by the holding in St. Louis-S. F. Ry. Co. v. Blake, Co. Treas., 36 F. (2d) 652, wherein that court held:

"Bondholders and judgment creditors were 'necessary parties,' within meaning of Comp. St. Okla. 1921, secs. 219, 224, to action under section 9971 to recover taxes because of illegality predicated on contention that they were levied to create a sinking fund for the payment of certain judgments which were predicated on debts and certain funding bonds which evidenced debts attempted to be incurred in violation of limitations contained in Const. Okla. art. 10, sec. 26."

In Re Chicago, R. I. & P. Ry. Co., 143 Okla. 217, 289 P. 352, this court held:

"A proceeding before the Court of Tax Review is neither a law action nor a suit in equity, but is a special proceeding authorized by the people to settle controversies involving the legality of tax levies."

There is no provision in chapter 66, art. 2, O. S. 1931, sec. 12305 et seq. (known as Initiative Petition 100), for making additional parties plaintiff and defendant in a protest proceeding before the Court of Tax Review, neither is there any such a right in a protest proceeding before the excise board of the county, which is also clothed with authority to strike from a municipal estimate or budget a proposed item of ad valorem tax levy.

If the judgment upon which the funding bond was based was void and so shown on the face of the judgment roll, the funding thereof does not make it valid. As to this item of protest, the judgment of the Court of Tax Review is reversed and the levy as to this item of the same is ordered stricken.

As to judgment No. 21257, we find that the petition merely alleges that the defendant is justly indebted to plaintiff in the sum of $2,036.42 for goods and merchandise delivered for which defendant promised to

pay. Summons was issued and the return shows to be "served upon J. W. Turley, member of school board dist. #1, Turley, Okla." That service was not sufficient to give the court jurisdiction of the defendant. There was no answer filed, and a default judgment was rendered. The petition does not state a cause of action. In Faught v. City of Sapulpa, supra, this court said:

"What must the judgment roll show? It must show a petition which states a cause of action, filed in a court of competent jurisdiction. The relief asked must be within the jurisdiction of the court. * * * In order to state a cause of action, the petition must allege that the indebtedness incurred was not in excess of the income and revenue provided for that purpose, or that it was authorized by a vote of the people."

The journal entry does not show that any testimony was introduced relative to the indebtedness sued upon being within the income and revenue provided for that fiscal year for that purpose, nor relative to the itemized statement of bonded indebtedness and appropriations of the municipality and condition of the funds thereof as required in section 2 of chapter 106, S. L. 1925. Section 3 of this chapter provides:

"No judgment shall be rendered against any municipality by any court until the provisions of section 2 hereof have been fully complied with. Any judgment rendered in violation of the provisions of this act shall be void and of no effect."

This court has held that the provisions of sections 2 and 3 of the act are binding on county officials and court officials. State ex rel. Wood et al. v. Kimbrell et al., 152 Okla. 239, 5 P. (2d) 366; Board of Com'rs of Carter County v. First Nat. Bank of Berwyn et al., 159 Okla. 283, 15 P. (2d) 6. We must conclude that the court never obtained jurisdiction of the defendant nor of the subject-matter, and that the judgment is void upon the face of the judgment roll, and a funding bond issued thereon will not support a tax levy to sustain same. Eaton v. St. Louis-S. F. Ry. Co., supra; Faught v. City of Sapulpa, supra. The judgment of the Court of Tax Review is reversed as to this item of protest and the levy is ordered stricken. (This holding is in no way in conflict with the holding of this court in Protest of St. Louis-S. F. Ry. Co., 157 Okla. 131, 11 P. (2d) 189, and in Protest of Gulf Pipe Line Co., Seminole County, et al. v. Gulf Pipe Line Co., 168 Okla. 136, 32 P. (2d) 42. In neither of these cases did the judgment roll show the judgment void).

Considering now the assignments of error appearing in the cross-petition in error, it is first contended that the Court of Tax Review erred in holding that the sum of $3,000 set up in the current year's balance sheet of the Tulsa county general fund for interest on outstanding warrants was illegal and that the surplus in the current year's general fund was understated and to that extent excessive, illegal, and void to the extent of .0185 of a mill.

In Protest of Chicago, R. I. & P. Ry. Co., 164 Okla. 72, 22 P. (2d) 1002, this court, dealing with the same proposition, held:

"In determining the amount of valid unsettled contracts made during a fiscal year at the end of the fiscal year, the amount of interest on outstanding warrants for that fiscal year may be added to the principal amount of those warrants"

—following the holding of this court in C. D. Coggeshall & Co. v. Smiley, Co. Treas., 142 Okla. 8, 285 P. 48, wherein this court held:

"The excise board is authorized to deduct from the balance on hand at the end of the fiscal year an amount sufficient to liquidate all valid unsettled contracts made during that fiscal year"

—and said:

"In order that there may be no question in the future, we repeat that, in determining the amount of valid unsettled contracts made during a fiscal year at the end of the fiscal year, the amount of interest on outstanding warrants for that fiscal year may be added to the principal amount of those warrants."

The Court of Tax Review committed error as to this item of protest and the judgment is reversed and the levy is sustained.

The second contention of error on cross-appeal relates to an appropriation to retire a sum ordered by the district court to be refunded in three criminal actions wherein cash bonds were forfeited and later the forfeitures set aside by the court. Upon setting aside the forfeitures, the court entered an order and purported judgment against Tulsa county for the amount of the cash bonds less that sum which had been paid to the county attorney as his commission or fees in forfeiture. The protestant contends that there was no judgment against the county upon which a levy could be made for retiring same. The cash deposited in trust in lieu of appearance bonds was paid out when forfeiture was declared, and the sum distributed before the forfeiture was set aside. No suit was filed against the county. The county was not a party to the

criminal proceedings, and neither was the county treasurer. The fact that the county treasurer was the holder of a trust fund would not justify a judgment against the county for money so held. The court had no jurisdiction in a criminal proceeding to render a judgment against the county (State v. Armstrong, 158 Okla. 290, 13 P. [2d] 198) ; and there is no valid judgment against the county for the retirement of which a levy can be made. The judgment of the Court of Tax Review as to this item of protest is affirmed.

The third contention of error on cross-appeal relates to an appropriation to retire judgment No. 8492, Minnetonka Lumber Co. v. J. W. Bryan et al., and School District No. 2, Tulsa County.

The protestee on cross-appeal seems to have abandoned this item of protest sustained by the Court of Tax Review, and has filed no brief attempting to sustain its contention of error. This court is not compelled to search the record for justifiable cause to reverse judgment of the Court of Tax Review, but will, in a proper case, consider that the contention has been abandoned and that the judgment of the Court of Tax Review is correct. The judgment of the Court of Tax Review as to this item is sustained.

The next contention of error on cross-appeal relates to an item of $39,232.81, received during the year 1931-32 as interest on daily balances on unexpended bond funds of the city of Tulsa and credited to the general fund of the city. The protestant claimed that this sum should have been credited to the sinking fund and the Court of Tax Review so held. It was contended that the legal transfer of the $39,232.81 to the sinking fund would increase the surplus in that fund to an amount which would reduce the levy to the extent of .34529 of a mill, and the protest of the levy was sustained to that extent.

During the hearing before the Court of Tax Review, the protestee city of Tulsa asked leave to withdraw and correct its public statement to show that the sinking fund accruals had been erroneously computed, claiming that if such accruals were correctly computed, it would show a deficit of $189,-000 instead of a surplus of $40,000, as shown by the statement. The statement was withdrawn and when returned for further consideration the sinking fund showed a deficit of $189,000. Since the sinking fund showed this large deficit, there would be no excess levy, and the Court of Tax Review entered an order denying any reduction in the levy, but ordered that the $39,232.81 be transferred from the general fund to the sinking fund of the city.

It is contended by the protestee that the Court of Tax Review was without authority or power to enter an order requiring the return of the funds theretofore misapplied to the general funds where the funds were not shown to be on hand at the time the order was made. If there were $120,789.73 credited to the general fund on June 30, 1932, as stated, it is immaterial that sufficient funds were not on hand when the order to transfer was made. The record should be corrected to show the $39,232.81 to be an asset in the sinking fund account and not the general fund account. The true fiscal condition of a municipality at the close of the fiscal year is determined by the excise board preliminary to the determination of the rate of ad valorem tax levy for the ensuing fiscal year. Protest of Bledsoe, supra. Had the funds been illegally transferred to the wrong fund prior to the end of the fiscal year and there were no funds on hand in the fund to which the transfer had been made at the end of the fiscal year, neither the excise board nor the court could direct that there be considered as cash on hand in the fund the sum shown to have been wrongfully withdrawn. Protest of Downing, supra.

The judgment of the Court of Tax Review as to this item of protest is sustained.

The views expressed herein with reference to collateral attack on judgments and funding bonds are not entirely in accord with the personal views of the writer of this opinion (see dissent in LeFlore County Excise Board v. Kansas City Southern Railway Co., 173 Okla. 238, 47 P. (2d) 580, but follow the views entertained by a majority of my associates.

The cause is remanded to the Court of Tax Review, with directions to enter judgment in conformity herewith.

McNEILL, C. J., and RILEY, PHELPS, and GIBSON, JJ., concur.