This memorandum opinion was not selected for publication in the New Mexico Reports.  Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**DONALD B. BEAMS,**

Petitioner-Appellant,

v.                                                                                          **NO. 29,400**

**KATHY RHINE,**
**f/k/a KATHY BEAMS,**

Respondent-Appellee.

**APPEAL FROM THE DISTRICT COURT OF GRANT COUNTY**
**J.C. Robinson, District Judge**

Donald B. Beams
Silver City, NM

Pro se Appellant

Kathy Rhine
Silver City, NM

Pro se Appellee

**MEMORANDUM OPINION**

**CASTILLO, Chief Judge.**

Appellant Donald Beams (Beams) appeals from a final decree of divorce

terminating the bonds of matrimony between Beams and his ex-wife Kathy Rhine (Rhine). The decree divided the parties community and separate property and similarly divided their debts. Beams asks that we vacate several of the district court's determinations and enter a revised decree. We decline to do so, and we affirm.

**BACKGROUND**

Beams and Rhine were married in October 2005. Beams filed a petition for dissolution of marriage from Rhine on January 14, 2008. In the petition, he asked the district court to "make an equitable division of the community and . . . award each party their separate property and impose upon each party their separate debts." At the time he filed this petition, Beams was represented by counsel. At the time Rhine filed her answer, she was also represented by counsel.

In July 2008, Beams' first attorney withdrew. Beams promptly secured substitute counsel who, after only two weeks, also withdrew. Beams secured a third attorney who filed one motion for Beams and then also requested withdrawal citing "a breakdown in communication and a deterioration of the client-attorney relationship." Beams initially objected to his third attorney's request for withdrawal—despite openly questioning her judgment and qualifications—but later changed course and asked that his third attorney be allowed to withdraw. That request was granted. Shortly before Beams' third attorney withdrew, Rhine's attorney also

withdrew citing Rhine's inability to meet her obligations.

In December 2008, Beams filed a pro se motion with the district court which was denied by sua sponte order because the motion did not comply with the rules of civil procedure. The district court specifically informed and cautioned Beams that, despite the fact that he was representing himself pro se, he was required to comply with all court rules.

On February 4, 2009, the parties went to trial on the petition and both appeared pro se. Our review of the trial transcript reveals that the court worked with the parties who clearly had no knowledge about the rules governing the proceeding. The court managed to maintain the solemnity of the proceedings despite the parties constant bickering and despite Beams emotional outburst during which he violently screamed at Rhine.

Following trial, the parties submitted proposed findings of fact and conclusions of law wherein they expressed their competing beliefs about how their property and debt should be divided. Thereafter, the district court entered a final decree of divorce and made numerous conclusions as to the division of property and debt. We decline to summarize the entire decree. Beams has appealed only specific aspects of the order. We discuss those aspects of the decree, as well as Beams' arguments, in our discussion.

**DISCUSSION**

Before addressing the issues on appeal, we must discuss the briefing in this matter. As noted above, the parties represented themselves pro se throughout much of the proceedings below and have proceeded pro se on appeal. The parties decision to represent themselves on appeal is not without consequence: the briefing is gravely inadequate.

Contrary to Rule 12-213(A) and (B) NMRA, both the brief in chief and answer brief lack the following: a table of contents; a table of authorities; a summary of the proceedings briefly describing the nature of the case, the course of proceedings, and the disposition in the court below; a summary of the facts relevant to the issues presented for review; citations to the record proper; the standard of review as to each issue on appeal; arguments accompanied by citations to authorities and applicable New Mexico decisions; specific attacks on the findings; and a conclusion with a concise statement of relief.

Beams submitted a brief in chief, an answer brief responding to Rhine's answer brief, and two addendums or supplements to his brief in chief. The addendums include varying attachments which, it appears, Beams intended us to consider as substantive evidence. The addendums and the attachments will not be considered. *See* Rule 12-213(D)(1) ("Except for those briefs specified in this rule, no briefs may

4

be filed without prior approval of the appellate court."); *see also Jemko, Inc. v. Liaghat*, 106 N.M. 50, 54, 738 P.2d 922, 927 (Ct. App. 1987) ("It is improper to attach to a brief documents [that] are not part of the record on appeal."). Neither the brief in chief nor any of the other submissions on appeal are in the correct format. *See* Rule 12-305 NMRA (specifying the required font size and spacing for briefs). While the foregoing demonstrates that neither parties submissions are acceptable, we are most troubled by the brief in chief.

The brief in chief begins with an "opening statement" which is incomprehensible. Thereafter, four issues are discussed. We have made numerous attempts to fully comprehend the arguments as to each issue, but have been unable to understand most of what Beams has written. As noted, the brief in chief is devoid of case citations and Beams has failed to tether his arguments to the order from which he has appealed. Beams relies instead on what he calls "points of fact" which purportedly support several "proposed conciliatory resolutions." He appears to be asking us to reevaluate the evidence presented below and enter a revised divorce decree that complies with his view of how the district court should have decided the matters at trial. Beams unnecessarily attacks Rhine's character throughout the brief in chief and unjustifiably questions the district court's judgment and objectivity. As described above, the district court exhibited great patience with the parties. In sum,

we have done our best to understand the content of the brief in chief, but find it largely incomprehensible and inadequate.

The foregoing provides more than ample grounds to summarily dismiss Beams' appeal. *See Santa Fe Exploration Co. v. Oil Conservation Comm'n*, 114 N.M. 103, 108, 835 P.2d 819, 824 (1992) (declining to consider arguments based on factual allegations which were unsupported by citations to the record proper); *Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 (declining to entertain a cursory and inadequately developed argument and stating that "[w]e will not review unclear arguments"); *ITT Educ. Servs., Inc. v. Taxation & Revenue Dep't*, 1998-NMCA-078, ¶ 10, 125 N.M. 244, 959 P.2d 969 (declining to consider a proposition that was unsupported by citation to authority). Because, however, "[i]t is the policy of this court to construe its rules liberally to the end that causes on appeal may be determined on the merits," *Trujillo v. Serrano*, 117 N.M. 273, 276, 871 P.2d 369, 372 (1994) (alteration in original) (internal quotation marks and citations omitted), we shall evaluate what we understand Beams to be arguing. *See Clayton v. Trotter*, 110 N.M. 369, 373, 796 P.2d 262, 266 (Ct. App. 1990) (stating that we will review pro se arguments to the best of our ability, but cannot respond to unintelligible arguments). Our understanding of Beams' arguments is derived primarily from the "summation of the brief in chief" which is located on pages fifteen

and sixteen of that document. We review the arguments in the order Beams presents them.

**Attorney Fees**

Beams' first argument concerns attorney fees. The divorce decree provides that Beams and Rhine are responsible for their own attorney fees and costs. Beams appears to be asking us to vacate this aspect of the decree and order Rhine to pay him $4,800 to cover legal fees he incurred as a result of the proceedings. "[W]e review the district court's ruling on attorney fees only for an abuse of discretion. An abuse of discretion occurs if the decision is against the logic and effect of the facts and circumstances of the case." *Garcia v. Jeantette*, 2004-NMCA-004, ¶ 15, 134 N.M. 776, 82 P.3d 947 (internal quotation marks and citation omitted).

Beams appears to claim that he should receive attorney fees because Rhine was allegedly uncooperative throughout the proceedings below and because he claims that she acted irrationally and vindictively. These arguments amount to nothing more than attacks on Rhine's character and fail to persuade us that the district court abused its discretion in requiring the parties to pay their own attorney fees. The court's decision was neither illogical nor contrary to the circumstances in this case. *Id.*

**Community Debts**

Beams' next two arguments concern the district court's allocation of certain

7

debts as community debts. Whether the district court correctly allocated Beams' and Rhine's debts is reviewed under the mixed question of fact and law standard. *See Fitzgerald v. Fitzgerald*, 70 N.M. 11, 13, 369 P.2d 398, 399 (1962) (addressing the issue of the division of community property and stating that "we will view the evidence in an aspect most favorable to the judgment" and "will not disturb a finding, supported by substantial evidence, nor will we weigh conflicting evidence"); *Bursum v. Bursum*, 2004-NMCA-133, ¶ 19, 136 N.M. 584, 102 P.3d 651 ("The threshold question of whether an item is community or separate debt is a legal issue that we review de novo."). We review mixed questions of fact and law for substantial evidence to support factual findings and conduct a de novo review of the application of those facts to conclusions of law. *See Ponder v. State Farm Mut. Auto. Ins. Co.*, 2000-NMSC-033, ¶ 7, 129 N.M. 698, 12 P.3d 960.

"Community debts are defined by exclusion, all debts contracted or incurred by either spouse during marriage that do not fall within one of the specific subsections of NMSA 1978, [Section] 40-3-9 A(1) through (6) [(1983),] defining 'separate debt.'" *Beneficial Fin. Co. of New Mexico v. Alarcon*, 112 N.M. 420, 423, 816 P.2d 489, 492 (1991). "We presume that a debt created during marriage is a community debt, and the party asserting otherwise bears the burden of demonstrating that the marital debt constitutes a separate debt under one of the categories set forth in Section[]

8

40-3-9(A)(1) through (6)." *Huntington Nat'l Bank v. Sproul*, 116 N.M. 254, 258, 861 P.2d 935, 939 (1993). "In apportioning a husband and wife's assets and liabilities, the [district] court must attempt to perform an allocation that is fair under all the circumstances." *Fernandez v. Fernandez*, 111 N.M. 442, 444, 806 P.2d 582, 584 (Ct. App. 1991).

**Line of Credit**

Beams argues that a debt which has been referred to as the Wells Fargo line of credit was wrongly determined to be a community debt. Neither party indicated whether a copy of the instrument creating the line of credit was included in the record proper. Our independent review of the parties trial exhibits reveals that a copy of the line of credit mortgage is contained in Beams' Exhibit Two. According to that exhibit, the line of credit was extended by Wells Fargo Bank N.A. on January 17, 2007, in the amount of $100,000 and was signed by both Rhine and Beams. It was secured by a mortgage on the New Mexico property, and the document indicates that the mortgage was recorded on February 9, 2007, in the records of Grant County, New Mexico in Book 269 at pages 765-776. The line of credit was created during the marriage and is, therefore, presumed to be a community debt. *Sproul*, 116 N.M. at 258, 861 P.2d at 939.

The district court found that Rhine obtained the Wells Fargo line of credit

9

during the marriage by mortgaging the New Mexico property that Rhine and Beam held jointly. This property consists of a house, land, and other improvements; it is undisputed that this property is community property. The district court found that the money obtained through the line of credit "benefited the community directly and indirectly by allowing the parties to maintain their lifestyle." The divorce decree provides that the parties shall sell the New Mexico property and provides that proceeds from the sale shall first be used to pay off the mortgage arising from the line of credit and shall then be used to pay off certain tax debts and then any fees associated with the sale. Finally, the decree provides that any proceeds remaining shall be divided equally.

Beams objects to this outcome. He asserts that the Wells Fargo line of credit and the mortgage arising from that line of credit should be deemed the sole and separate property of Rhine. He asks us to impose upon Rhine the sole obligation to satisfy the mortgage arising from the line of credit out of proceeds she receives, if any, from the sale of the New Mexico property. He asserts on appeal, as he asserted at trial, that the money obtained through the line of credit did not benefit the community. He alleges that Rhine used the money obtained from the line of credit to pay off premarital credit card debt and to make mortgage payments on another home in Arizona that Rhine purchased before the marriage and was her separate property.

10

At trial, Rhine denied using any of the money accrued through the line of credit to pay off credit cards and stated that the money was used exclusively for the benefit of the New Mexico property and to make mortgage payments on her Arizona home. Thus, Beams' allegation that Rhine used the money to pay off her separate premarital credit card debt is unavailing. The district court did not believe this allegation, and we will not pass on the court's judgment as to the truth or falsity of the evidence presented at trial. *See Dewitt v. Rent-A-Center, Inc.*, 2009-NMSC-032, ¶ 22, 146 N.M. 453, 212 P.3d 341 ("[W]eighing evidence and making credibility determinations are uniquely within the province of the trier of fact . . . .").

As to making payments on her Arizona home, Rhine did testify that she directed a portion of the proceeds from the line of credit to the debt payments due on her separate Arizona property. The record indicates that the district court was aware of this fact but, for reasons we shall now explain, the court determined that the entirety of the money accrued from the line of credit benefited the community.

It is undisputed that the New Mexico property was purchased with $146,000 that Rhine obtained by refinancing her separate Arizona property. The district court found this fact to be significant. The trial transcript indicates that the district court concluded that, to the extent money from the line of credit was used to make debt payments on Rhine's separate Arizona property, Rhine was merely making payments

11

towards a debt she had incurred for the benefit of the community with the purchase of the New Mexico property.

As discussed above, community debts are defined by exclusion. *Alarcon*, 112 N.M. at 423, 816 P.2d at 492. What is not a separate debt is a community debt. *Id.* The definition of a separate debt is contained in the six subsections provided under Section 40-3-9(A). There are no facts to support a conclusion that the line of credit is a separate debt as set forth in the statute. The trial transcript indicates that the line of credit was obtained to allow Beams and Rhine to pay their bills and maintain the New Mexico property and also to make payments on Rhine's Arizona home. That home served as the financial foundation which allowed Beams and Rhine to secure the New Mexico property. We reject Beams' contention that the district court erred in concluding that the Wells Fargo line of credit was community debt. We proceed to the next issue.

**Tax Debt**

Beams' next argument concerns Beams' and Rhine's outstanding federal and New Mexico State taxes from 2006. The district court found that Rhine "received an early distribution of $44,420[] from her 401k in 2006 resulting in a tax consequence of $13,873[] to IRS and N.M. Taxation and Revenue. The money benefited the community[.]" While not expressly stated, it is clear that the district court determined

that the 2006 tax debt is a community debt. Both parties denied having the resources to pay off this debt. As such, the district court ordered that the tax debt be paid from any net proceeds accrued from the sale of the New Mexico property.

On appeal, Beams asks us to vacate the district court's determination that the parties should pay the tax debt equally out of proceeds accrued from the forthcoming sale of the New Mexico property and asks us to enter an order requiring Rhine to pay the majority of the debt. Beams claims that Rhine should be held primarily responsible for the debt because, he alleges, Rhine took the early 401k distribution surreptitiously and then spent the money on herself, not the community.

In effect, Beams is challenging the district court's findings and is asking us to reevaluate the evidence and reach a different conclusion than that reached by the district court. This we will not do. *Blea v. Fields*, 2005-NMSC-029, ¶ 18, 138 N.M. 348, 120 P.3d 430 ("We do not reweigh the evidence or substitute our judgment for that of the district court, nor do we consider evidence that is unfavorable to the findings." (citations omitted)). There is no error here. We proceed to Beams' final issue on appeal.

**Sale of New Mexico Property**

Lastly, Beams asks that we modify the provisions in the divorce decree concerning the parties mutual obligations regarding the sale of the New Mexico

13

property. Beams asks us to enter a "revised decree" and order Rhine to vacate the premises within ninety days of that order. He also asks that we permit him to live in the home after Rhine leaves. Finally, he explains that he would be willing to pay $450 per month towards the Wells Fargo line of credit if Rhine agrees to leave the property. Beams does not understand the nature of this court's authority. He is asking us to rewrite the divorce decree to his liking and requests that we facilitate negotiations between the parties in that process. We can do neither. *See State v. Herrera*, 92 N.M. 7, 13, 582 P.2d 384, 390 (Ct. App. 1978) ("[T]he Court of Appeals is a court of review."). The arguments in section four of Beams' brief in chief are rejected.

**CONCLUSION**

For the foregoing reasons, the divorce decree is affirmed.

**IT IS SO ORDERED.**


_____
**CELIA FOY CASTILLO, Chief Judge**

**WE CONCUR:**


_____
**MICHAEL E. VIGIL, Judge**


_____
**TIMOTHY L. GARCIA, Judge**